# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED CENTRAL BANK,**
        **Plaintiff,**

    v.                                          Case No. 11-C-0693

**WELLS STREET APARTMENTS, LLC,**
et al.,
        **Defendants.**

## DECISION AND ORDER

In this diversity case, plaintiff United Central Bank ("UCB") seeks to foreclose mortgages on several apartment buildings in Wisconsin. Some of these properties are located in Milwaukee; the rest are located in the Fox Cities. UC named dozens of entities as defendants in its complaint, but only five defendants are actively defending the suit. Those five defendants are KMWC 845, LLC; CS MWC, LLC; BV Evergreen, LLC; BV Wells, LLC; and 523 West Wall Street, LLC.[1] In a previous order, I granted UCB's motion to appoint a receiver for the properties. Before me now are: (1) the defendants' motion to reconsider my order appointing the receiver; (2) UCB's motion for summary judgment on its claims for mortgage foreclosure; (3) the defendants' motion for summary judgment on UCB's claims for mortgage foreclosure; and (4) UCB's motion for default judgment against certain defendants.

The undisputed facts relating to these motions are as follows. In 2005, Mutual Bank in Harvey, Illinois made loans to the defendants. These loans were evidenced by

---

[1]Unless otherwise indicated, when I refer to "the defendants" in this opinion, I mean these five parties only.

promissory notes. As security for the loans, the defendants executed three different mortgages, which I will refer to as Mortgages I, II, and III. Mortgage I applies to four properties, which are located in Appleton, Menasha, and Milwaukee. See ECF No. 13-1. Mortgage II applies to a property located in Grand Chute, Wisconsin. See ECF No. 13-3. Mortgage III applies to seven properties located in Milwaukee. See ECF No. 13-5. Between May and September of 2008, the defendants stopped making payments on the promissory notes, and today the notes remain in default.

On July 31, 2009, regulators closed Mutual Bank, and the Federal Deposit Insurance Corporation ("FDIC") was named receiver. On the same day, the FDIC entered into an agreement with UCB, under which UCB took over the deposits and loans of Mutual Bank. By virtue of this agreement, UCB became the holder of the notes and the mortgages on the Wisconsin properties.

On July 20, 2011, UCB commenced the present action and alleged three counts of mortgage foreclosure—one count for each of the three mortgages. It has moved for summary judgment on each of these counts.

The defendants' main argument in opposition to UCB's motion for summary judgment, and in support of their own motion for summary judgment, is that UCB is barred from foreclosing the mortgages because UCB is barred from enforcing the underlying notes. The argument that UCB is barred from enforcing the underlying notes is based on Illinois's "one refiling" or "single refiling" rule. This rule arises from the Illinois courts' interpretation of an Illinois statute which states that a plaintiff who voluntarily dismisses a suit "may commence a new action within one year or within the remaining period of

limitation, whichever is greater." See 735 ILCS 5/13–217.[2] The Illinois courts interpret this language to mean that a plaintiff who voluntarily dismisses a suit may commence only one new action within the prescribed time. See Carr v. Tillery, 591 F.3d 909, 914 (7th Cir. 2010) (stating rule and collecting Illinois cases). Once the plaintiff commences this one new action, any further action is barred, even if the original statute of limitations has not expired. See Timberlake v. Illini Hosp., 676 N.E.2d 634, 635–36 (Ill. 1997); Flesner v. Youngs Dev. Co., 582 N.E.2d 720, 722 (Ill. 1991).

In the present case, the Illinois single-refiling rule is relevant because UCB has filed and voluntarily dismissed at least two actions in Illinois against the defendants for breach of the promissory notes that the Wisconsin mortgages secure. First, in September 2009, UCB filed six separate actions in Illinois state court along with a seventh action in the United States District Court for the Northern District of Illinois under the diversity jurisdiction. Each action was against a different group of entities, but each of the borrowers on each of the promissory notes, plus all guarantors, were included as defendants in those suits. In each suit, UCB alleged that the borrowers had defaulted on the relevant note and that the guarantors had failed to honor their guarantees. For purposes of the single-refiling rule, those seven actions collectively served as UCB's original or first action on the notes. Between June 2010 and June 2011, UCB voluntarily dismissed all seven of those actions. Then, on July 17, 2011, UCB filed a new action in the Northern District of Illinois under the diversity jurisdiction against all of the borrowers

---

[2]An amended version of § 13-217 appears in the statute books. However, because the Illinois Supreme Court found that the act that amended § 13-217 was unconstitutional, the unamended, pre-1995 version of § 13-217 remains in effect. See Eskridge v. Cook County, 577 F.3d 806, 808 (7th Cir. 2009).

3

on all of the notes, all of the guarantors, and other parties. In this action, UCB asserted the same claims for breach of the notes and the guarantees that it had asserted in the seven lawsuits that it had previously filed and voluntarily dismissed. In addition, UCB asserted other claims against other parties, including a claim for foreclosure on a property located in Chicago. The defendants argue that this new action in the Northern District of Illinois was the one and only "refiling" that UCB was permitted under the single-refiling rule in connection with the notes. However, UCB voluntarily dismissed that action in January 2012. The defendants argue that once UCB voluntarily dismissed that action—its only permitted "refiling" under Illinois law—it extinguished its ability to enforce the promissory notes that the Wisconsin mortgages secure. The defendants further argue that if UCB cannot enforce the notes, then it cannot foreclose the mortgages securing the notes. Thus, argue the defendants, UCB's claims for mortgage foreclosure must be dismissed.

The first thing to note about the defendants' argument is that, even if the single-refiling rule would prevent UCB from enforcing all of the notes, it would not follow that UCB is barred from foreclosing all three of the mortgages. Mortgages II and III are governed by Wisconsin law,[3] and under Wisconsin law a creditor is allowed to foreclose a mortgage even if a legal action to enforce the underlying note is barred. See, e.g., First Nat'l Bank of Madison v. Kolbeck, 247 Wis. 462, 464–68 (1945). Accordingly, the Illinois single-refiling rule does not prevent UCB from foreclosing Mortgages II and III.[4]

---

[3]Mortgages II and III contain Wisconsin choice-of-law provisions, and the defendants concede that Wisconsin law applies to those mortgages. See Br. in Supp. of Mot. for Summ. J. at 12 n.2, ECF No. 121.

[4]The defendants cite Mitchell Bank v. Schanke, 268 Wis. 2d 571 (2004), for the proposition that under Wisconsin law "a mortgagee will not be able to foreclose upon the

4

However, Mortgage I contains an Illinois choice-of-law provision, and UCB does not dispute that that mortgage is governed by Illinois law. Unlike Wisconsin, Illinois prohibits a creditor from foreclosing a mortgage when an action on the underlying note is barred by the statute of limitations or another procedural rule. See, e.g., Emory v. Keighan, 88 Ill. 482, 1878 WL 9915, at *2 (1878); see also Dale Joseph Gilsinger, Annotation, Survival of Creditor's Rights Created by Mortgage or Deed of Trust as Affected by Running of Limitation Period for Action on Underlying Note, 36 A.L.R.6th 387 (2008) (collecting cases showing that state courts are split on the question of whether a creditor can foreclose a mortgage when an action on the underlying note is barred, and that Wisconsin and Illinois take opposite positions on this question); 55 Am. Jur. 2d Mortgages § 618 (Westlaw 2013) (same). Thus, if UCB is barred by the single-refiling rule from enforcing the notes associated with Mortgage I, then the defendants would be entitled to summary judgment on UCB's claim for foreclosure on the properties subject to Mortgage I.

UCB makes a number of arguments in support of the proposition that the single-refiling rule does not bar it from enforcing the notes associated with Mortgage I. First, it argues that a district court sitting in Wisconsin is not bound by the Illinois single-refiling rule. However, the single-refiling rule is an extension of the doctrine of res judicata (also known as claim preclusion) in that the rule turns a dismissal without prejudice into a dismissal with prejudice. See Carr, 591 F.3d at 915 (noting that the single-refiling rule is an "extension of the doctrine of res judicata to a class of cases in which the decision

---

mortgage if there is no debt," id. at 592. This proposition is true, but under First National Bank of Madison and related Wisconsin cases, a debt continues to exist even if an action to collect the debt is barred.

5

deemed to be res judicata is a dismissal without prejudice"). In the present case, there are eight dismissals that might have preclusive effect: the six Illinois state-court actions and the two successive Northern District of Illinois actions. If by virtue of the single-refiling rule the dismissals of the six Illinois state-court actions have preclusive effect, then I would be required to recognize that effect because federal courts are required to give the same effect to a state-court record that the state court that rendered the record would give it. See 28 U.S.C. § 1738 (third par.); Carr, 591 F.3d at 914; Reinke v. Boden, 45 F.3d 166, 169 (7th Cir. 1995). Likewise, because the two Northern District of Illinois actions were brought under the diversity jurisdiction, the preclusive effect of the dismissal orders in those cases is governed by Illinois law. See Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 508 (2001); Allen Block Corp. v. County Materials Corp., 512 F.3d 912, 915 (7th Cir. 2008). Thus, if an Illinois court would apply the single-refiling rule in this action and conclude that UCB is barred from enforcing the notes, then so must I.

UCB next argues that the present action is not a second refiling of the actions previously filed in the Illinois state and federal courts because those actions did not include a claim to foreclose Mortgage I. This argument is correct, but it is beside the point. The defendants are not arguing that the present action is itself an impermissible refiling. Rather, as discussed, they are arguing that the relief sought in the present action—foreclosing Mortgage I—is barred because, under Illinois law, which governs Mortgage I, a creditor cannot foreclose a mortgage when its right to enforce the underlying note is procedurally barred. The defendants then argue that UCB's right to enforce the notes associated with Mortgage I in any court (not just this one) is procedurally barred because, by virtue of the single-refiling rule, the voluntary dismissals of UCB's previous

6

suits are res judicata to any further action on the notes. Thus, the fact that the present action is not itself an impermissible refiling under § 13-217 is irrelevant.

UCB also seems to argue that the second-filed Northern District of Illinois action does not count as its one permitted refiling because that action included claims and defendants that UCB did not assert in the original seven actions. See Br. in Opp. at 17, ECF No. 141. However, UCB concedes that it re-alleged in the second-filed Northern District of Illinois action all of the claims it had previously alleged in the original seven actions against all of the same defendants, including its claim for breach of the notes underlying Mortgage I. Id. at 10. The only difference between the second-filed Northern District of Illinois action and the first seven actions is that the second-filed Northern District of Illinois action included some new claims and some new defendants. Thus, although the second-filed Northern District of Illinois action included some claims that were not "refilings" of previously dismissed claims, that does not erase the fact that such action also asserted for the second time UCB's claim for breach of the promissory notes underlying Mortgage I. Accordingly, the second-filed Northern District of Illinois action counted as UCB's one permitted refiling of its claim for breach of those notes.

UCB next argues that, even if it has already exhausted its two permitted filings under § 13-217, another Illinois statute, 735 ILCS 5/13-207, operates to save UCB's claim for breach of the notes. Section 13-207 provides in relevant part as follows:

> A defendant may plead a set-off or counterclaim barred by the statute of limitation, while held and owned by him or her, to any action, the cause of which was owned by the plaintiff or person under whom he or she claims, before such set-off or counterclaim was so barred, and not otherwise.

7

Under this rule, which I will refer to as the "counterclaim rule," a defendant in a lawsuit may bring a counterclaim after the period authorized in the applicable statute of limitations has elapsed, as long as the plaintiff's claim arose before the cause of action brought as a counterclaim was barred. <u>Bethlehem Steel Corp. v. Chicago Eastern Corp.</u>, 863 F.2d 508, 511 (7th Cir. 1988) (Illinois law). This rule is relevant here because UCB has counterclaims asserting breach of the notes associated with Mortgage I (and other notes) pending in an action filed by the defendants and others against UCB in Illinois state court. That action was filed on July 8, 2011. UCB filed its counterclaims with respect to the notes in that action on November 29, 2011. UCB argues that the counterclaim rule saves claims that would otherwise be barred by the single-refiling rule, and that therefore its ability to enforce the notes underlying Mortgage I has not been extinguished.

UCB states that the counterclaim rule "allows otherwise barred claims to proceed as a Counterclaim where a litigant has availed himself of the Court's jurisdiction by filing his own lawsuit." Br. in Opp. at 11, ECF No. 141. However, that statement is not accurate. The counterclaim rule does not allow any kind of "otherwise barred claim" to proceed as a counterclaim—it allows only a claim that is otherwise barred <u>by a statute of limitation</u> to proceed as a counterclaim. 735 ILCS 5/13-207; <u>U.S. Bank v. Manzo</u>, 960 N.E.2d 1238, 1250 (Ill. Ct. App. 2011); <u>Wells Fargo Bank v. Terry</u>, 928 N.E.2d 540, 543 (Ill. Ct. App. 2010). Thus, the counterclaim rule would help UCB only if its claims based on the notes were barred by a statute of limitation. But, as discussed, the single-refiling rule is a rule of preclusion, not a statute of limitation, and so the counterclaim rule does not save UCB's otherwise barred claims.

8

UCB points out that in Mermelstein v. Rothner, 812 N.E.2d 461 (Ill. Ct. App. 2004), the court determined that the counterclaim rule saved a claim that was otherwise barred by § 13-217. However, in that case, the claim was not otherwise barred by the single-refiling rule but by the expiration of the original statute of limitations and the additional one-year period allowed by § 13-217 for a litigant to bring its one, permitted refiling. Id. at 462–63. Thus, Mermelstein involved a claim that was barred by a statute of limitation and does not support the proposition that the counterclaim rule saves claims that are barred by the single-refiling rule.

UCB's remaining argument is that its pending counterclaims in the Illinois state-court action are not barred by the single-refiling rule because UCB filed the counterclaims before it voluntarily dismissed the second-filed Northern District of Illinois action. (UCB filed its counterclaims on November 29, 2011, and it voluntarily dismissed the second-filed Northern District of Illinois action on January 9, 2012.) However, as the Seventh Circuit has noted, under Illinois law, the date on which the second-filed action (i.e., the single permitted refiling) is dismissed is irrelevant. Carr, 591 F.3d at 914–15; Eskridge v. Cook County, 577 F.3d 806, 807–08 (7th Cir. 2009). Rather, once the second action is filed, the single-refiling rule bars any further action on the same claim. Here, UCB filed its second action on the notes on July 17, 2011, and it did not file its counterclaims until November 29, 2011. Thus, once UCB voluntarily dismissed its second action, the order dismissing that action became res judicata to any further action on the notes. It follows that UCB's pending Illinois counterclaims are barred,[5] and that UCB is precluded from foreclosing

---

[5]The defendants here (the plaintiffs in the Illinois state-court action in which UCB's counterclaims are pending) have filed a motion to dismiss UCB's counterclaims on the

9

Mortgage I. Summary judgment will be entered in defendants' favor on Count I. Because UCB no longer has any rights to the properties that are subject to Mortgage I, I will also discharge the receiver from managing those properties. However, because UCB can foreclose Mortgages II and III even if an action to enforce the notes associated with those mortgages would be barred by the single-refiling rule, defendants' motion for summary judgment on Counts II and III will be denied.

The next question is whether UCB is entitled to summary judgment on Counts II and III. As noted, the parties agree that Wisconsin substantive law governs UCB's claims for foreclosing Mortgages II and III. In Wisconsin, claims for foreclosure on real estate are governed by Chapter 846 of the Wisconsin Statutes. Much of Chapter 846 could be described as "procedural" law rather than "substantive" law, and therefore one may wonder how much of that chapter applies in a federal diversity case. See, e.g., Gacek v. American Airlines, Inc., 614 F.3d 298, 301–02 (7th Cir. 2010) (noting that federal rather than state "procedural" law applies in diversity cases and other cases in which state law supplies the rule of decision). However, neither party points to any provision of Chapter 846 and argues that it does not apply in this case. Moreover, to my knowledge, there are no well-established federal procedures governing real-estate foreclosures. Therefore, I will simply apply Chapter 846 without worrying about the procedural-substantive distinction.

Under Chapter 846, a foreclosure action has two steps: rendering a judgment of foreclosure and sale, and proceedings after the judgment. Shuput v. Lauer, 109 Wis. 2d

---

basis of the single-refiling rule. As of the date of this opinion, the Illinois court has not decided that motion. UCB has not asked me to defer ruling on the present motions until the Illinois court decides the motion to dismiss the counterclaims.

10

164, 171 (1982). I construe UCB's motion for summary judgment as a request to enter a judgment of foreclosure and sale in connection with each of the surviving mortgages on the ground that there is no genuine dispute concerning the facts that UCB must establish in order to obtain such a judgment. Under Wisconsin law, a judgment of foreclosure and sale determines whether there has been a default on the mortgage, whether the mortgagee may realize upon the security, the time and place of sale of the security and the notice required, and the right of the mortgagee to a judgment of deficiency. See id. at 171. Thus, to obtain a judgment of foreclosure and sale via summary judgment, UCB must show that there are no disputes of fact concerning these matters.

For the most part, the defendants do not point to any existing factual disputes concerning the matters identified in the previous paragraph. They do not dispute that UCB owns the mortgages or that the mortgages are in default. However, the defendants raise three issues in opposition to UCB's motion for summary judgment (in addition to the single-refiling rule): (1) that there is a genuine factual dispute concerning the precise amount that the defendants owe UCB; (2) that UCB cannot obtain summary judgment because it did not mention the defendants' affirmative defenses in its motion for summary judgment; and (3) that UCB is not entitled to attorneys' fees.

Regarding the first issue: UCB filed proposed findings of fact along with its motion for summary judgment, and several of those findings state the amounts that are currently owed under the notes associated with Mortgages II and III. See UCB Prop. Findings of Fact ¶¶ 29 & 43, ECF No. 117-3. The defendants did not file a response to UCB's proposed findings of fact, and therefore, by operation of the local rules of this court, UCB's proposed findings are deemed admitted. See Civil L.R. 56(b)(4) (E.D. Wis. 2010).

11

Accordingly, the amounts stated in UCB's proposed findings of fact establish the amounts owed under the notes.[6]

Regarding the second issue: The defendants point out that they raised a number of affirmative defenses to UCB's foreclosure claims in their answer and that UCB did not mention those defenses in its motion for summary judgment. Therefore, reason the defendants, those defenses remain viable and UCB has not yet shown that it is entitled to a judgment of foreclosure and sale. In support of this argument, the defendants cite three cases that are not binding on me: Stillman v. Travelers Insurance Co., 88 F.3d 911 (11th Cir. 1996); Books a Million, Inc. v. H&N Enterprises, Inc., 140 F. Supp. 2d 846 (S.D. Ohio 2001); and Navistar International Transportation Corp. v. Freightliner Corp., No 96 C 6922, 1998 WL 786388 (N.D. Ill. Nov. 6, 1998). The defendants claim that each of these cases supports the proposition that in order to obtain summary judgment on a claim, a plaintiff

---

[6] I add that besides not filing a response to UCB's proposed findings of fact, the defendants have not otherwise pointed to evidence creating a genuine factual dispute as to the amounts due. Although the defendants point out that UCB mailed them letters that reflect "balances" that do not match the amounts stated in the proposed findings, see Starkman Aff. ¶ 2 & Ex. A, ECF No. 139-1, they do not claim that the letters reflect the true amounts due. Rather, they argue that the letters raise a question as to whether the amounts stated in the proposed findings are correct. However, the letters were requests for the borrowers to confirm that UCB had correctly stated the balances due, and there is no indication that the balances listed in the letters corresponded to the exact amounts that UCB would have been entitled to recover in an action to enforce the notes. Moreover, the letters could have stated incorrect balances, and the defendants have not submitted evidence suggesting that the letters stated the correct balances and that UCB's proposed findings state incorrect balances. The only evidence in the record regarding which balances are correct consists of an affidavit from a UCB employee who states that the amounts in the proposed findings were calculated using UCB's business records and industry-standard accounting-tracking software. See Rybicki Aff. ¶¶ 28 & 44, ECF No. 117-2. There is no evidence indicating how the balances stated in the letters were calculated. Thus, the only reasonable conclusion that can be drawn from the summary-judgment record is that the amounts stated in the proposed findings are correct.

must in its opening brief demonstrate the absence of a factual dispute concerning any affirmative defenses to the claim that the defendant may have listed in its answer. However, to the extent that these cases could be read to support such a rule, I will not follow them. Instead, I conclude that a rule applied by other courts—the rule that the failure to raise an affirmative defense in opposition to a motion for summary judgment constitutes an abandonment of the defense—is the better rule. See United Mine Workers v. Pittston Co., 984 F.2d 469, 478 (D.C. Cir. 1993); accord Pandrol USA, LP v. Airboss Ry. Prods., Inc., 320 F.3d 1354, 1366 (Fed. Cir. 2003). This is the better rule because when a plaintiff moves for summary judgment on an entire claim (as opposed to only part of a claim or only on a defense to the claim), it is asking for judgment on that claim as a matter of law. See Fed. R. Civ. P. 56(a). The existence of factual disputes concerning an affirmative defense would be a reason to not grant the plaintiff judgment as a matter of law, even if there are no factual disputes concerning the plaintiff's claim itself. Thus, when the plaintiff moves for summary judgment on an entire claim, it is necessarily also moving for summary judgment on any affirmative defenses to that claim. It is therefore incumbent on a defendant that wishes to prevent entry of summary judgment on the claim to come forward with evidence showing the existence of a genuine factual dispute concerning an affirmative defense that, if ultimately successful, would defeat the claim. If the defendant does not come forward with such evidence, and the plaintiff otherwise shows that it is entitled to judgment as a matter of law on its claim, then the affirmative defense is extinguished.

Another reason to prefer the rule that a defendant abandons any affirmative defenses to a claim when it fails to raise those defenses in response to the plaintiff's

13

motion for summary judgment on the claim is that it would be wasteful to require a plaintiff to include in its summary-judgment opening brief an argument directed to every affirmative defense that the defendant may have listed in its answer. Defendants will often list affirmative defenses in their answer that they have no intention of pursuing. For example, in the present case, the defendants list sixteen affirmative defenses in their answer, and I am sure that they never intended to litigate all sixteen of those defenses. Thus, the most efficient way to handle affirmative defenses at the summary-judgment stage is to require the defendant to raise the defenses it intends to pursue at trial in response to the plaintiff's motion for summary judgment on a claim.

In the present case, the defendants have not come forward with evidence supporting any of their affirmative defenses (other than the defense based on the single-refiling rule, which I have addressed on the merits). To be sure, one paragraph in one affidavit submitted by the defendants in opposition to UCB's motion for summary judgment appears to support one of the defendants' affirmative defenses, which concerns "fraud in the execution of the loan documents." See Starkman Aff. ¶ 3, ECF No. 139-1. However, this one paragraph is conclusory and does not create a genuine factual dispute concerning that defense. Moreover, the defendants in their brief in opposition to UCB's motion for summary judgment develop no cogent legal argument in support of that defense. Thus, I consider that defense waived. See Bank of America v. Veluchamy, 643 F.3d 185, 189–90 (7th Cir. 2011) (stating that undeveloped arguments are waived).

The remaining issue the defendants raise in opposition to UCB's motion for summary judgment concerns attorneys' fees. They contend that UCB's claim for attorneys' fees is not supported by evidence and does not constitute a reasonable fee. However, in

14

its motion for summary judgment, UCB does not request that the judgment of foreclosure and sale include an award of attorneys' fees. Likewise, in its reply brief in support of its motion for summary judgment, UCB does not respond to the defendants' argument concerning attorneys' fees or otherwise indicate that it wants the judgment to include an award of attorneys' fees. Accordingly, the only conclusion to draw is that UCB is not requesting an award of attorneys' fees. Thus, the defendants' point about the absence of evidence concerning a claim for attorneys' fees is taken, but it is irrelevant because UCB is not pursuing a claim for attorneys' fees in the first place.

A final matter that needs to be discussed in connection with UCB's motion for summary judgment is UCB's right to a deficiency judgment in the event that the proceeds of the sale of the mortgaged properties are insufficient to cover the amount of the indebtedness. The parties do not discuss this issue, but I find it prudent to do so, since it is arguable that because under the Illinois single-refiling rule UCB may no longer enforce the notes associated with Mortgages II and III, UCB has no right to a deficiency judgment. But it turns out that, under Wisconsin law, UCB is entitled to a deficiency judgment even if UCB's right to enforce the notes is barred. That is because Mortgages II and III contain covenants to pay the indebtedness. See Mortgage II § 2.01(a), ECF No. 13-3; Mortgage III, § 2.01(a), ECF No. 13-5. Under Wisconsin law, if the mortgage contains such a covenant, the mortgagee may have a deficiency judgment even if an action on the underlying note is barred. See First Nat'l Bank of Madison, 247 Wis. at 467; Ogden v. Bradshaw, 150 N.W. 399, 400 (Wis. 1915).

Accordingly, I conclude that UCB's motion for summary judgment should be granted as to Counts II and III. However, the actual judgment of foreclosure and sale is a technical

15

document that must include a number of specific findings and orders. See generally Wis. Stat. Ch. 846; see also IIA Wis. Sup. Ct. Office of Judicial Education, Wisconsin Judicial Benchbook–Civil CV 39-11 to CV 39-12 (4th ed. 2012). UCB has not provided me with a proposed judgment of foreclosure and sale or provided me with all of the information I would need to enter such a judgment. The missing information relates to two issues. First, I must state in the judgment whether the mortgaged premises can be sold in parcels, Wis. Stat. § 846.01, yet UCB has not provided me with any information on that issue. Second, I may not enter a judgment of foreclosure and sale until twenty days after the lis pendens has been filed, Wis. Stat. § 846.01, yet UCB has not indicated whether or when it filed the lis pendens concerning the present case. Thus, some further proceedings will be needed before a judgment of foreclosure and sale can be entered. I think the best way to proceed is to have UCB submit the missing information concerning the possibility of selling in parcels and the lis pendens along with a proposed judgment of foreclosure and sale that contains everything required by Chapter 846. The defendants will then have a short time to respond to the information and proposed judgment submitted by UCB. After receiving the parties' submissions, I will resolve any remaining disputes and then issue the actual judgment of foreclosure and sale.

There are two remaining motions to address. The first is the defendants' motion to reconsider the appointment of a receiver for the mortgaged properties. The defendants make two arguments in this motion. First, they restate their argument that UCB's claims for foreclosure are barred by the Illinois single-refiling rule. Because I have already addressed that argument, I will not address it further here, except to repeat that because the single-refiling rule bars UCB's claim for foreclosure in connection with Mortgage I, the

receiver will be discharged from managing the properties that are subject to that mortgage. Defendants' second argument is that there is a possibility that the "Appleton properties" will be sold, and that this somehow constitutes a basis for discharging the receiver. However, the properties located in Appleton, Wisconsin are subject only to Mortgage I, and because the receiver will be discharged from managing the properties that are subject to that mortgage for other reasons, I need not consider the defendants' second argument. Accordingly, the motion for reconsideration with respect to the appointment of the receiver will be granted in part and denied in part.

The final motion is UCB's motion for a default judgment against all of the defendants that have failed to appear in this suit. UCB has shown that each of these defendants (except for two) has been served and that they have failed to appear, and thus I will direct the Clerk of Court to enter their defaults.[7] See Fed. R. Civ. P. 55(a). However, entering a default judgment is a separate matter, and at this point is not clear what UCB wants a judgment against the defaulting defendants to look like. UCB asks that a default judgment be entered "consistent with the demands" of the complaint, see Mot. for Default J. at 5, ECF No. 118, but I am not sure what that means. To the extent that UCB wants me to include language in the judgment of foreclosure and sale disposing of any interests of the defaulting defendants in the properties subject to Mortgages II and III, then it may include appropriate language to that effect in the proposed judgment of foreclosure and sale that it submits in compliance with my instructions above. However, since UCB may not

---

[7]The two exceptions are Scimitar Realty Corp. and the defendants identified as "unknown tenants." UCB has not filed proof of having served Scimitar Realty Corp., and the unknown tenants have not been identified. No default will be entered with respect to these defendants.

17

foreclose Mortgage I, UCB may not have a default judgment against any of the defendants in connection with that mortgage. If UCB wants any other kind of relief against the defaulting defendants, then it must file a brief identifying that relief and explaining why it is entitled to it.

## CONCLUSION

For the reasons stated, **IT IS ORDERED** that UCB's motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**. The motion is granted to the extent that it is established that UCB is entitled to a judgment of foreclosure and sale on Counts II and III of the Second Amended Complaint. Its motion for summary judgment is denied as to Count I of the Second Amended Complaint. UCB shall submit the missing information identified above and a proposed judgment of foreclosure and sale within 30 days of the date of this order. If the defendants dispute the information provided by UCB or object to the form of the proposed judgment, they may file a brief explaining their position on these mattes within 15 days of the date on which UCB files the information and the proposed judgment.

**IT IS FURTHER ORDERED** that the defendants' motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**. The motion is granted as to Count I of the Second Amended Complaint and denied as to Counts II and III.

**IT IS FURTHER ORDERED** that the defendants' motion to reconsider the appointment of a receiver is **GRANTED IN PART** and **DENIED IN PART**. The motion is granted to the extent that the receiver is discharged from managing the properties subject

to Mortgage I. The motion is denied to the extent that it concerns the properties subject to Mortgages II and III.

**IT IS FURTHER ORDERED** that UCB's motion for a default judgment against certain defendants is **GRANTED IN PART** and **DENIED IN PART**. The motion is granted to the extent that the Clerk of Court is directed to enter the default of each defendant identified in the fifth paragraph of UCB's motion, ECF No. 118, except for Scimitar Realty Corp. and the unknown tenants. The motion is also granted to the extent that UCB may include language terminating the interests of the defaulting defendants in the properties subject to Mortgages II and III in its proposed judgment of foreclosure and sale. In all other respects, the motion is denied.

**FINALLY, IT IS ORDERED** that a telephonic status conference will be held on **June 27, 2013 at 10:30 a.m.** for the purpose of identifying any further proceedings that may be needed beyond those stated in this opinion. The court will initiate the call.

Dated at Milwaukee, Wisconsin, this 7th day of June, 2013.

s/ Lynn Adelman

LYNN ADELMAN
District Judge